IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEAGUE TO SAVE LAKE TAHOE, a
California non-profit
corporation,

     Plaintiff,

    v.

THE CITY OF SOUTH LAKE TAHOE, a
municipality; and the CITY
COUNCIL OF THE CITY OF SOUTH
LAKE TAHOE,

     Defendants.
_____

2:11-cv-01648-GEB-GGH

ORDER GRANTING MOTION TO
DISMISS

   Defendants City of South Lake Tahoe and the City Council of the City of South Lake Tahoe (collectively, "the City") move for dismissal of the first, second, and fourth claims in Plaintiff League to Save Lake Tahoe's ("the League's") First Amended Complaint ("FAC"), arguing under Federal Rule of Civil Procedure 12(b)(1) that the League lacks standing and its claims are not ripe for judicial review. The claims involved in this motion are the federal claims on which subject matter jurisdiction is based, and the City also argues that if the motion is granted, the remaining state claims should be decided in state court. The City also moves for dismissal of these claims under Rule 12(b)(6), arguing that the League fails to state claims upon which relief can be granted. The League opposes the motion.

//

1

# I. LEGAL STANDARD

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. "[T]he moving party converts the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court," and once the moving party does so, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (internal quotations and citation omitted).

Here, the gravamen of the City's jurisdictional attack is its argument that "[the League] has neither sustained, nor is in imminent threat of sustaining injury-in-fact from the alleged misconduct arising out of [its] claims," and the City presents evidence supporting this argument. (Defs.' Mot. to Dismiss ("Mot.") 1:16-17; Defs.' Request for Judicial Notice ("Defs.' RJN") Exs. A-G.) Since the motion attacks the truth of the League's injury allegations rather than their facial sufficiency, and the City supports its motion with evidence, the City's jurisdictional attack is factual.

When "[f]aced with a factual attack on subject matter jurisdiction,

> "the trial court may proceed as it never could under Rule 12(b)(6) . . . . [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

1          Moreover, the plaintiff will have the burden of
2          proof that jurisdiction does in fact exist."

3  Thornhill Pub. Co., Inc. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733

4  (9th Cir. 1979) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549

5  F.2d 884, 891 (9th Cir. 1979)).

6  **II. REQUESTS FOR JUDICIAL NOTICE**

7          Each party requests that judicial notice be taken of the Tahoe

8  Regional Planning Compact, specific Tahoe Regional Planning Agency

9  ordinances and rules of procedure, and portions of the City's General

10 Plan Update and corresponding Environmental Impact Report. These

11 requests are granted, since these documents are "capable of accurate

12 determination," are "referenced in the complaint," and their

13 "authenticity is unquestioned." Fed. R. Evid. 201(b); Swartz v. KPMG

14 LLP, 476 F.3d 756, 763 (9th Cir. 2007) (stating "a court may consider a

15 writing referenced in a complaint but not explicitly incorporated

16 therein if the complaint relies on the document and its authenticity is

17 unquestioned"); Pl.'s Request for Judicial Notice ("Pl.'s RJN") Exs. A-

18 C; Defs.' RJN Exs. A-E. Further, the City  attached as Exhibit G to its

19 motion the declaration of Hilary Hodges which can be considered under

20 the 12(b)(1) standard. Thornhill Pub. Co., Inc., 594 F.2d at 733 ("Where

21 the jurisdictional issue is separable from the merits of the case, the

22 judge may consider the evidence presented with respect to the

23 jurisdictional issue and rule on that issue, resolving factual disputes

24 if necessary.").

25 **III. BACKGROUND**

26 **A. Tahoe Regional Planning Compact**

27         The Tahoe Regional Planning Compact ("TRP Compact") is a

28 congressionally ratified agreement between California and Nevada that

governs development surrounding Lake Tahoe. <u>League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency</u>, 105 Cal. App. 3d 394, 396 (1980). The TRP Compact establishes a bistate agency, the Tahoe Regional Planning Agency ("TRPA"), with "jurisdiction over the entire region." <u>People ex rel. Younger v. Cnty. of El Dorado</u>, 5 Cal. 3d 480, 487 (1971). Pursuant to the TRP Compact, the TRPA maintains and enforces a regional plan, which plans for land-use, transportation, conservation, recreation, and public services and facilities. TRP Compact Art. V (c), (d). TRPA's regional plan "establish[es] minimum [environmental] standard[s] applicable throughout the region," but "leav[es] to the jurisdiction of the respective States, counties and cities the enactment of specific and local ordinances, and rules, regulations and policies which conform to the regional plan." TRP Compact Art. VI(a).

The TRP Compact proscribes the development of any "project" in the region which is not a TRPA approved project. TRP Compact Art. VI(a) ("No project . . . may be developed in the region without obtaining the review and approval of the [TRPA] . . . ."). Furthermore, the TRPA must "[p]repare and consider a detailed environmental impact statement before deciding to approve or carry out any project," and "no project may be approved unless it is found to comply with [TRPA's] regional plan and with the ordinances, rules and regulations enacted . . . to effectuate that plan." TRP Compact Art. VII(a)(2) & VI(b). The TRP Compact requires that "[t]he public . . . be consulted during the environmental impact statement process" through the solicitation of "views . . . during a public comment period not to be less than 60 days." TRP Compact Art. VII(b), (c).

The TRPA has been in the process of updating the current operative regional plan (the "1987 Regional Plan") "[s]ince 2002." (City

1 of South Lake Tahoe Final Environmental Impact Report ("Final EIR") 4.1-
2 3, attached as Ex. E to Defs.' RJN.) The City alleges that "TRPA is
3 scheduled to update its [1987] Regional Plan in 2012." (Mot. 3:19.)

4 **B. The City's General Plan Update**[1]

5 On May 17, 2011, the City, through its City Council, adopted
6 the City of South Lake Tahoe General Plan Update ("GPU"). (First Am.
7 Compl. ("FAC") ¶ 1.) The City promulgated the GPU pursuant to the "State
8 Planning & Zoning Law, (Gov. Code, § 6500[0], et seq.)[,] . . . [which]
9 require[s] that cities and counties adopt a general plan for the future
10 development, configuration and character of the city or county and
11 require[s] that future land use decisions be made in harmony with that
12 general plan." Bownds v. City of Glendale, 113 Cal. App. 3d 875, 880
13 (1980) ("A general plan . . . serves to provide a standing consistent
14 answer to recurring questions and to act as a guide for specific plans
15 or programs."); EIR 3.0-70. An Environmental Impact Report ("EIR") was
16 completed in connection with the GPU, and the City certified the Final
17 EIR on the same date that it adopted the GPU. (FAC ¶ 1.)

18 "The [GPU] is . . . inconsistent with TRPA's [1987] Regional
19 Plan," meaning that portions of the GPU allow development in the City of
20 South Lake Tahoe that, if implemented, could cause the minimum
21 environmental standards set forth in the 1987 Regional Plan to be
22 exceeded. (FAC ¶ 4; City of South Lake Tahoe Draft Environmental Report
23 ("Draft EIR") 1.0-4, attached as Ex. D to Defs.' RJN.) "[Environmental]
24 Impact 4.1.2" in the EIR specifically states: "Implementation of the
25 [GPU] would conflict with the 1987 Regional Plan for the Lake Tahoe

26

27     [1]     The following facts are undisputed and appear in Plaintiff's
First Amended Complaint, documents of which judicial notice has been
28 taken, or the Hodges declaration, which is properly considered under
Rule 12(b)(1).

1 Basin and Associated plans and regulations." (Draft EIR 1.0-4.)

2 According to the EIR, "[t]he [GPU] has been closely coordinated with the

3 overall approach and intent of the TRPA Regional Plan Update to ensure

4 that the new General Plan policies and standards do not create conflict

5 with the eventual updated Regional Plan." (Draft EIR 4.1-26.) Therefore,

6 the inconsistencies in the GPU are caused by the City's attempt to

7 anticipate the TRPA's update of the 1987 Regional Plan.

8          In order to mitigate the potential impact of the

9 inconsistencies until the TRPA promulgates a new regional plan, the City

10 added the following language to the GPU:

11          The City shall not implement any provision or
          standard of the proposed General Plan Update that
12          is in conflict with the 1987 Regional Plan until
          such time as the Regional Plan has been updated and
13          the General Plan is determined by the City and TRPA
          to be consistent with the new Regional Plan and
14          TRPA Environmental Carrying Capacities.

15 (City of South Lake Tahoe General Plan, Final Draft ("GPU") LU-7, May

16 17, 2011, attached as Ex. C to Defs.' RJN; Draft EIR 1.0-4.) The Final

17 EIR states that the City "anticipate[s] that the [GPU] will be

18 incorporated into the updated Regional Plan, thereby eliminating any

19 such conflicts." (Final EIR 3.0-3.4.) The Final EIR also states: "It

20 should also be noted that implementation of [this] mitigation measure

21 after eventual adoption of the Regional Plan Update may require

22 modifications to the . . . [GPU]." (Final EIR 3.0-74.)

23 **C. Declaration of Hilary Hodges**

24          The City buttressed its position that it will not implement

25 any provision or standard of the [GPU] that is in conflict with the 1987

26 Regional Plan by citing the following averments in the declaration of

27 Hilary Hodges, Development Services Director for the City of South Lake

28 Tahoe:

1       2. At the present time, no development projects
2       have been implemented pursuant to the [GPU].

3       3. At the present time, it is entirely unknown
     which projects, if any, will be implemented
4       pursuant to the [GPU].

5       4. At the present time, the City has neither
     implemented nor contemplated any development
6       projects which conflict with the Regional Plan.

7       5. At the present time, the City has neither
     implemented, pursuant to the [GPU], any development
8       projects which would change the environment of
     South Lake Tahoe with respect to building heights,
9       commercial floor area, . . . transect zoning, or
     increased urbanization.
10
     6. Implementation of development projects depends
11      on any number of factors including availability of
     funding, acquisition of necessary interests in
12      land, and the approval of both TRPA and the City
     Council when such projects are proposed, amongst
13      others.

14 (Hodges Decl. ¶¶ 2-6, attached as Ex. G to Defs.' RNJ.)

15 **D. The League's Allegations**

16      The League filed this action against the City following the

17 City's adoption of the GPU, "challenging . . . the City['s] . . . (1)

18 certification of the [EIR], (2) adoption of the [GPU], and (3) . . .

19 failure . . . to submit the [GPU] to the [TRPA] for review and approval

20 pursuant to the [TRP Compact]." (FAC ¶ 1.) The League alleges in its

21 first claim for relief that "the [GPU] is preempted by [the TRP

22 Compact]" because "[t]he [GPU] actually conflicts with the [TRP]

23 Compact's requirements." (FAC ¶¶ 99-101.) The League alleges in its

24 second claim that "[t]he [GPU] is a 'project' as defined by the Compact"

25 and that "[b]y unilaterally adopting the [GPU], the City violated its

26 mandatory duty pursuant to TRPA's regulations to submit the [GPU] to the

27 TRPA for [the TRPA's] review and approval" in violation of the TRP

28 Compact, TRPA's regional plan, and TRPA's ordinances and rules of

1 procedure. (FAC ¶¶ 5, 106-115.) The League alleges in its fourth claim

2 that the City's challenged actions "have deprived [the League] and its

3 members of procedural, informational, and environmental protection

4 rights secured . . . by the Compact under federal law" "in violation of

5 42 U.S.C. § 1983." (FAC ¶ 119.) The League seeks a writ of mandate under

6 state law in its third claim and challenges the adequacy and legality of

7 the EIR under the California Environmental Quality Act ("CEQA") in its

8 fifth and sixth claims. (FAC ¶¶ 116-17, 120-33.)

9      The League alleges that "[t]he recreational activities of the

10 League's members will be directly affected by traffic, air pollution,

11 water pollution, aesthetic impacts, and other imminent impacts resulting

12 from the City's approval and implementation of the [GPU]." (FAC ¶ 31.)

13 The League also alleges that its members' "[p]roperty values and their

14 use and enjoyment of those properties will be reduced because of

15 increased traffic, aesthetic impacts, increased pollution in Lake

16 Tahoe's shore zone, increased air pollution, and increased urbanization

17 and building heights." (FAC ¶ 32.) Further, the League alleges that

18 "[t]he [City's] failure to submit the [GPU] to TRPA for review and

19 approval has denied the League and its members their procedural rights

20 and adversely affects their informational and conservational interests."

21 (FAC ¶ 33.)

22      The League "seeks an order vacating the [EIR] and its

23 accompanying findings and certification, setting aside the [GPU], and

24 mandating that the City apply to TRPA for review and approval of the

25 [GPU]" so that the League's alleged injuries could be redressed. (FAC ¶

26 3; FAC ¶¶ A-E.)

27 //

28 //

1 |                          **IV. DISCUSSION**

2 |         The City argues that "[the League] does not have standing to

3 | bring its first, second, or fourth [claims for relief] because [the

4 | League] has not suffered any 'injury in fact.'" (Mot. 6:12-14.) The City

5 | specifically argues that the League "has . . . failed to establish that

6 | its alleged injury is 'actual or imminent,'" because "[t]he very injury

7 | that [the League] complains *may* happen, *cannot* in fact happen because

8 | [the TRP] Compact, the [GPU], and the . . . EIR all require that any

9 | provision, standard, or project of the [GPU] which is inconsistent with

10 | [TRPA's] Regional Plan *cannot and will not* be implemented." (Mot. 5:23-

11 | 26 (emphasis in original); 9:26.) The City also argues that "these

12 | claims are not ripe for adjudication" "for similar reasons" and that

13 | "[t]hese [claims] would only be ripe after a provision, standard,

14 | project, or activity is actually proposed pursuant to the [GPU]." (Mot.

15 | 5:27, 13:12-14.)

16 |         The League counters that it has standing to bring its first

17 | claim in which it challenges the inconsistent portions of the GPU,

18 | because "the League and its members are harmed by any rules, such as

19 | those adopted by the City in its GPU, that authorize any new buildings

20 | or increased land coverage whether in conflict with the [1987] Regional

21 | Plan or not." (Opp'n 11:20-22.) The League further rejoins that the

22 | "[s]econd [claim] seeks to remedy a procedural injury resulting from the

23 | City's failure to submit its GPU to TRPA for review and approval[,]

24 | . . . [and] [t]he procedural harm to the League has already occurred."

25 | (Opp'n 5:18-27.) The League also argues that "[b]ecause . . . the

26 | injuries alleged by [the League] are concrete and imminent for both the

27 | [f]irst and [s]econd [c]laims, those claims . . . are [also] ripe for

28 | review." (Opp'n 13:11-12.) Finally, the League argues its fourth claim,

1  in which it alleges violations under 42 U.S.C. § 1983, is based upon the

2  same violations of federal rights alleged in its first and second

3  claims. (Opp'n 19:15-18.)

4       Article III of the Constitution "restricts federal court[]

5  [jurisdiction] to the resolution of cases and controversies." <u>Davis v.</u>

6  <u>Fed. Election Comm'n</u>, 554 U.S. 724, 732 (2008). "Federal courts are

7  presumed to lack jurisdiction, unless the contrary appears affirmatively

8  from the record." <u>San Diego Cnty. Gun Rights Comm. v. Reno</u>, 98 F.3d

9  1121, 1126 (9th Cir. 1996) (internal quotation marks and citation

10  omitted). "Two components of the Article III case or controversy

11  requirement are [the closely related concepts of] standing and

12  ripeness." <u>Bova v. City of Medford</u>, 564 F.3d 1093, 1095-96 (2009). "To

13  allege a justiciable [claim for relief], a plaintiff must plead facts

14  that are sufficient to confer standing and demonstrate that the claim is

15  ripe for determination." <u>Dermer v. Miami-Dade Cnty.</u>, 599 F.3d 1217, 1220

16  (11th Cir. 2010).

17       "As the part[y] invoking federal jurisdiction, [the]

18  plaintiff[] bear[s] the burden of establishing . . . standing to [seek

19  the relief it requests]." <u>San Diego Cnty.</u>, 98 F.3d at 1126 (citing <u>Lujan</u>

20  <u>v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)). "To do so, [it]

21  must demonstrate three elements which constitute the 'irreducible

22  constitutional minimum' of Article III standing." <u>Id.</u> (quoting <u>Lujan</u>,

23  504 U.S. at 560).

24       First, [it] must have suffered an "injury-in-fact"
     to a legally protected interest that is both

25       "concrete and particularized" and "actual or
     imminent," as opposed to "'conjectural' or

26       'hypothetical.'" Second, there must be a causal
     connection between [its] injury and the conduct

27       complained of. Third, it must be "likely" - not
     merely "speculative" - that [its] injury will be

28       "redressed by a favorable decision."

1  Id. (quoting Lujan, 504 U.S. at 560-61).

2        In comparison, "[r]ipeness is peculiarly a question of

3  timing." Thomas v. Union Carbide Agr. Prods. Co., 473 U.S. 568, 580

4  (1985). "For a suit to be ripe within the meaning of Article III, it

5  must present concrete legal issues, presented in actual cases, not

6  abstractions." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112,

7  1123 (9th Cir. 2009). "A claim is not ripe for adjudication if it rests

8  upon contingent future events that may not occur as anticipated, or

9  indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300

10  (1998) (internal quotation marks and citation omitted).

11        In many cases, "the constitutional component of the ripeness

12  inquiry" "coincides squarely with standing's injury in fact prong."

13  Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir.

14  2006).

15        For example, a claim is not ripe for
   adjudication if it rests upon contingent future
16     events . . . . That is so because, if the
   contingent events do not occur, the plaintiff
17     likely will not have suffered an injury that is
   concrete and particularized enough to establish the
18     first element of standing. In this way, ripeness
   and standing are intertwined.
19  Id.

20        Here, the crux of the City's standing and ripeness arguments

21  is that the League neither has suffered nor will suffer an "injury in

22  fact" for the following reasons, which are supported by evidence in the

23  record: the GPU itself does not implement development; "no development

24  projects have been implemented" to date "pursuant to the [GPU]"; the

25  City has not "contemplated any development projects which conflict with

26  the [1987] Regional Plan"; and the TRP Compact, the GPU, and the

27  accompanying EIR "make abundantly clear that no projects which violate

28  [1987] Regional Plan or eventual Regional Plan Update can or will be

11

implemented" in the future. (Mot. 5:23-26, 8:2-22, 9:28-10:7; Hodges Decl. ¶ 2, 4; City of South Lake Tahoe General Plan, Final Draft, LU-7, May 17, 2011, attached as Ex. C to Defs.' RJN; Final EIR 3.0-3.4; TRP Compact Art. VI(b).)

The League counters that the City's "delayed implementation of . . . GPU provisions that conflict with . . . the [1987] Regional Plan does not defeat the League's standing [to bring its first claim]," because "[e]ven if TRPA adopts a Regional Plan . . . that cures the City's inconsistent GPU requirements, the League will continue to be harmed--even more imminently--by the City's authorizations of increases in development on the southern shore of Lake Tahoe." (Opp'n 11:7-26.) However, this argument and the allegations in the League's FAC fail to identify "a causal connection between the [harm to the League members' property values or environmental, aesthetic, and recreational interests] and [the mere existence of inconsistent provisions in the GPU]," for which the League seeks redress in its first claim for relief. Lujan, 504 U.S. at 560. The League's FAC specifically alleges that its future injuries will be caused by the "approval and *implementation* of the [GPU]." (FAC ¶¶ 31-32 (emphasis added.) The League also fails to demonstrate that "it [is] 'likely,' as opposed to merely 'speculative,' that [its alleged] injury will be 'redressed by a favorable decision,'" Lujan, 504 U.S. at 560; the League has not demonstrated that declaratory or injunctive relief that cures the inconsistent portions of the GPU, which is the alleged source of the League's alleged injuries, will prevent the "increases in development on the southern shore of Lake Tahoe." (Opp'n 11:25.)

In addition, "[t]he [League] . . . will have ample opportunity later to bring its legal challenge at a time when harm is more imminent

1 and more certain," since the League will have the opportunity to

2 challenge specific development projects when those projects undergo the

3 environmental review required under the TRP Compact and before those

4 projects receive the approval of both the TRPA and the City Council.

5 Ohio Forestry Ass'n, 523 U.S. at 734; TRP Compact VI(a) & VII(a)-(c);

6 Hodges Decl. ¶ 6. Therefore, the League has not shown that it has

7 standing to bring its first claim for relief, or that what prompts it to

8 seek relief in its first claim is ripe for judicial decision, since the

9 League's alleged injury "rests upon contingent future events that may

10 not occur" and is not "fairly traceable to the [City's] [adoption of the

11 GPU which contains provisions inconsistent with the 1987 Regional

12 Plan]." Texas, 523 U.S. at 300; Lujan, 504 U.S. at 560.

13         The League argues that its "[s]econd [claim] seeks to remedy

14 a procedural injury resulting from the City's failure to submit its GPU

15 to TRPA for review and approval." (Opp'n 5:18-20.) The League

16 specifically argues that "[t]he procedural harm to the League has

17 already occurred, the City having refused to submit the GPU to TRPA,"

18 and that "[t]he City's failure has prevented any proceeding before TRPA

19 from occurring at which the League would have a right to air its

20 concerns about the GPU's inconsistency with [the 1987] Regional Plan and

21 ordinances and the resulting environmental harms." (Opp'n 6:2-4.)

22         To support its arguments, the League attempts to analogize its

23 alleged procedural injury to procedural injuries alleged under the

24 National Environmental Policy Act ("NEPA").[2] (Opp'n 4:9-9:15.) "[T]o show

25

26         [2]    The League does not argue that the TRPA's review of the GPU
27 would be governed by NEPA. See Glenbrook Homeowners Ass'n v. Tahoe
Regional Planning Agency, 425 F.3d 611, 615-16 (9th Cir. 2005) (holding
28 that regulations promulgated pursuant to NEPA did not apply to the
TRPA).

13

1   a cognizable injury in fact [for an alleged procedural injury], [the

2   League] must . . . show[] that (1) the [City] violated certain

3   procedural rules; (2) these rules protect [the League's and its

4   members'] concrete interests; and (3) it is reasonably probable that the

5   challenged action will threaten [the League's and its members'] concrete

6   interests." Citizens for Better Forestry v. U.S. Dep't of Agric., 341

7   F.3d 961, 969-70 (9th Cir. 2003).

8          However, the League has not demonstrated how a fundamental

9   principle of constitutional injury in the Article III jurisprudence

10  concerning NEPA cases is applicable here; specifically, that "the

11  creation of a risk that serious environmental impacts will be overlooked

12  . . . is itself a sufficient 'injury in fact' to support standing

13  . . . ." City of Davis v. Coleman, 521 F.2d 661, 671 (9th Cir. 1975)

14  (internal quotation marks omitted); Citizens for Better Forestry, 341

15  F.3d at 970 ("[T]he harm [at issue for an alleged procedural injury

16  under NEPA] consists of added risk to the environment that takes place

17  when governmental decisionmakers make up their minds without having

18  before them an analysis (with public comment) of the likely effects of

19  their decision on the environment.").

20         Here, the League has failed to demonstrate any such "risk that

21  serious environmental impacts will be overlooked." City of Davis, 521 at

22  671. The record demonstrates that the GPU has already undergone

23  environmental review under CEQA and that before specific development

24  projects can be implemented under the GPU, they must undergo additional

25  environmental review and receive approval from both the TRPA and the

26  City before they are implemented. TRP Compact VI(a) & VII(a)(2); Hodges

27  Decl. ¶ 6; Final EIR. The League has also failed to demonstrate "actual"

28  harm to its or its members' procedural rights, since the evidence

1  demonstrates that the League has already expressed its concerns about

2  the inconsistencies and environmental impacts of the GPU during the

3  public comment period under CEQA for the City's environmental review.

4  (Final EIR (describing public comments and the City's responses); FAC ¶

5  33 ("The League and its members have been involved in the administrative

6  proceedings that have been provided to date for the [GPU], including

7  attending meetings and providing written and oral comments.").)

8        The League's argument that its procedural injury is analogous

9  to the procedural injury alleged in NEPA cases is unpersuasive, since

10  the League has failed to demonstrate that the rationale on which the

11  procedural injury in NEPA cases is based supports the finding of an

12  "injury-in-fact" in this case. Here, the League has failed to

13  demonstrate that "it is reasonably probable that [the City's failure to

14  submit the GPU to TRPA for approval] will threaten [the League's and its

15  members'] concrete interests [in ensuring that serious environmental

16  impacts will not be overlooked, and in exercising their right to air

17  their concerns about the GPU's inconsistency with TRPA's 1987 Regional

18  Plan and ordinances and the resulting environmental harms]." Citizens

19  for Better Forestry, 341 F.3d at 970. Therefore, the League has not

20  shown that it has standing to bring its second claim, and the Court

21  lacks subject matter jurisdiction over that claim.

22        Subject matter jurisdiction is lacking over the League's

23  fourth claim for the same reasons the Court lacks jurisdiction over the

24  first and second claims, since the fourth claim is based on the same

25  alleged injuries asserted in the first and second claims. Therefore, the

26  League's first, second, and fourth claims are dismissed without

27  prejudice. Frigard v. United States, 862 F.2d 201, 204 (9th Cir. 1988)

28  ("Ordinarily, a case dismissed for lack of subject matter jurisdiction

should be dismissed without prejudice so that a plaintiff may reassert [its] claims in a competent court.").

**V. CONCLUSION**

Since the Court lacks subject matter jurisdiction over the League's first, second, and fourth claims, those claims are dismissed without prejudice, and the state law claims are dismissed without prejudice since the federal claims have been dismissed.

Dated:  January 18, 2012

_____

GARLAND E. BURRELL, JR.
United States District Judge